# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

**PROFILE PRODUCTS LLC,**

    *Plaintiff,*

vs.

**MAGISTRATE JUDGE STEPHEN L. CROCKER**

**CIVIL ACTION NO. 3:09-cv-00092-SLC**

**ENCAP, LLC,**

**JURY TRIAL DEMANDED**

    *Defendant.*

---

THOMAS A. LEWRY       (P36399)
BRIAN S. TOBIN        (P67621)
**BROOKS KUSHMAN P.C.**
1000 Town Center
Twenty-Second Floor
Southfield, Michigan  48075-1238
Tel:   (248) 358-4400
Fax:   (248) 358-3351

*Attorneys for Plaintiff*

PHILIP WEISS
**WEISS & WEISS**
300 Old Country Road, Suite 251
Mineola, New York  11501
Tel:   (516) 739-1500
Fax:   (516) 739-2189
    *Appearing Pro Hac Vice*

DAVID J. HARTH
**PERKINS COIE LLP**
One East Main Street, Suite 201
Madison, Wisconsin  53703
Tel:   (608) 663-7460
Fax:   (608) 663-7499

*Attorneys for Defendant*

---

# PROFILE PRODUCTS LLC'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR CLAIM CONSTRUCTION



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II. OVERVIEW OF THE INVENTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    A. Claim Construction Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    B. The Proper Construction Of The Claims . . . . . . . . . . . . . . . . . . . . . . . . . -5-

        1. "Seed-containing mulch product" (Claim 1 Only) . . . . . . . . . . . . . . -5-

        2. "Compacting" (Claims 1 And 11) . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

        3. "Mulch Flakes" (Claim 1 Only) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

        4. "Natural or Synthetic Binder" (Claim 11 Only) . . . . . . . . . . . . . . . -10-

        5. "Admixture" (Claim 11 Only) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

## TABLE OF AUTHORITIES

**Page No.**

### CASES

*Bates v. Coe*,
　98 U.S. 31 (1878) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Comark Communications, Inc. v. Harris Corp.*,
　156 F.3d 1182 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

*Phillips v. AWH Corp*,
　415 F.3d 1303 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 8, 9, 13

*Renishaw PLC v. Marposs Societa' per Azioni*,
　158 F.3d 1243 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Smithkline Beecham Corp. v. Apotex Corp.*,
　439 F.3d 1312 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*TechSearch, LLC v. Intel Corp.*,
　286 F.3d 1360 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Toro Co. v. White Consol. Indus. Inc.*,
　199 F.3d 1295 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Vitronics Corp. v. Conceptronic, Inc.*,
　90 F.3d 1576 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel　(248) 358-4400
Fax　(248) 358-3351

www.brookskushman.com

## I. INTRODUCTION

Profile Products LLC's ("Profile") sued Encap, LLC ("Encap") for infringing U.S. Patent No. 6,349,499 ("the '499 patent") (Exhibit 1[1]). The '499 patent covers a seed mulch product that contains both seed and mulch in a single bag.

The '499 patent has two independent claims, claim 1 and claim 11. The terms Encap asks to construe appear either in claim 1, claim 11, or both. They also appear in some of the asserted dependent claims.

Each of Encap's proposed constructions ignores the meaning of the claim terms as used in the '499 patent. The '499 patent claims both a seed and mulch **product** and a **process** for preparing a mulch for such a product. A key to the invention is that the mulch has a density similar to that of the seed. The purpose is to ensure that when the mulch is mixed with seed, the two do not separate *e.g.*, during shipping and handling.

Two of Encap's proposed constructions require that the seed be attached or enclosed within the mulch itself. Under those constructions, the relative densities of the mulch and seed would be entirely irrelevant as the seed could not segregate from the mulch during shipping or handling. This highlights one flaw in Encap's position.

Encap's proposed constructions also break the rules of claim construction by importing limitations from the specification. In one instance, Encap intentionally misquotes the dictionary definition of one of the disputed claim terms to support its construction.

Encap's claim construction motion should be denied.

---

[1] Exhibits 1-2 are attached to the Declaration of Brian S. Tobin.

**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

## II. OVERVIEW OF THE INVENTION

The '499 patent relates to a "biodegradable artificial mulch which, when mixed with grass or other crop seeds, does not tend to segregate during shipping and handling." (Ex. 1, col. 1, ll. 6-9). This key feature of the invention is completely ignored by Encap. Instead, Encap focuses on a secondary aspect of the invention that "also provides for unique mulch products, including mulch products having seed attached or incorporated within mulch flakes." (Ex. 1, col. 1, ll. 54-56). But these other "unique" products are not the main focus of the patent or the claims.

The '499 patent claims has two independent claims — claim 1, a product claim, and claim 11, a process claim. A key part of all claims is that the mulch has a density of ±50% of the average density of the seeds it is mixed with. (Ex. 1, Claims 1 and 11.) This density range is important to ensure that when the mulch is mixed with the seed, the two products do not segregate during shipping and handling. (Ex. 1, col. 1, ll. 6-9.) If the densities are not similar, the denser material will settle to the bottom of the package.

This density requirement is only relevant where the seed and mulch are mixed, but not attached to each other. If they are attached, they will not separate during shipping and handling.

Encap's Brief selectively quotes portions of the patent that discuss other ways to use the mulch, including attaching or encapsulating the seed. But in the primary preferred use, "the mulch flakes are **mixed** [with grass seed] to form the turf grass re-seeding product . . . ." (Ex. 1, col. 4, ll. 45-46, emphasis added.)



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

The patent specification also refers to "mulch" and "mulch flakes" interchangeably.  The specification begins by reciting that "[t]he mulch flakes of the present invention may be prepared from any mix of lignocellulosic materials which allow the targeted density to be obtained."  (Ex. 1, col. 1, ll. 59-61, emphasis added).  The specification then alternates, saying "[t]he mulch may have any shape which is adapted to enable the mulch to perform its intended functions . . . ."  (Ex. 1, col. 1, ll. 66-67, emphasis added).  The specification later recites that "[t]he mulch flake material is preferably prepared from lignocellulosic materials."  (Ex. 1, col. 2, ll. 21-22, emphasis added).  Later again, the specification provides that "[t]he processing of the mulch referred to above involves dividing the mulch raw materials into the desired size and shape, followed by optionally compounding, agglomerating and shaping."  (Ex. 1, col. 2, ll. 49-52, emphasis added).

While the specification says that "[i]t is preferable that the mulch be supplied in flake form," (ex. 1, col. 2, ll. 5-6, emphasis added), this is only a preference, not a requirement.  The specification goes on to say that "other shapes are useful as well . . . ."  (Ex. 1, col. 2, l. 8.)

The specification concludes with a series of definitions for terms Spittle wanted to specifically define.  Patent law allows an inventor to be his own lexicographer.  Spittle gave definitions for "agglomerating," "compacting," "density" and "substantially unprocessed." (Ex. 1, col. 6, ll. 32-67).  The fact that Spittle did not expressly define other terms shows that he intended those terms would have their ordinary meaning.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

### III. ARGUMENT

**A.     Claim Construction Law**

The starting point for claim construction is the claim itself. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal quotation marks omitted). "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Philips*, 415 F.3d at 1314. "The claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

The patent specification helps to explain the meaning of claims because claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315. The specification can be used "in case of doubt or ambiguity . . . to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878) (quoted in *Phillips*, 415 F.3d at 1315). But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323.

Although the Court may also consult the prosecution history of the patent when it is in evidence, *Phillips*, 415 F.3d at 1317, it is not in evidence on Encap's motion.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

"In some cases, the ordinary meaning of the claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

Finally, an inventor may choose to be his own lexicographer and expressly define terms used in the claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

### B.   The Proper Construction Of The Claims

#### 1.   "Seed-containing mulch product" (Claim 1 Only)

| Profile's Proposed Construction | Encap's Proposed Construction |
|---|---|
| A product having seeds with an average density of X, and mulch flakes with a density of X±0.5X. | Mulch product having seed bound within or encapsulated within mulch flakes. |

Claim 1 specifically defines what "seed-containing mulch product" is — it is a mulch product that also has seeds in it. The specific composition of the product is defined by claim 1:

> A seed-containing mulch product, comprising **a seed component having an average density of X, and mulch flakes having a density of X±0.5X . . . .**

(Ex. 1, Claim 1, emphasis added.) As claim 1 states, the product must have seed and mulch flakes. If the average density of the seed is X, the density of the mulch must be within 50% of X. The claims, themselves, thus, define the phrase "seed-containing mulch product."


Brooks Kushman P.C.
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

Encap's proposed construction of "seed-containing mulch product" is baseless for at least two reasons. First, and most important, by using cropped quotes, Encap misstates the main teaching of the patent. As discussed in Section II, above, the **primary** purpose of the invention is to create a product that contains seed **mixed** with mulch: Grass seed and mulch are "mixed to form the turf grass re-seeding product." (Ex. 1, col. 4, ll. 45-46.) The parts of the patent Encap quotes are a secondary aspect of the invention: "The invention **also** provides for **unique** mulch products, including mulch products having seed attached or incorporated within mulch flakes." (Ex. 1, col. 1, ll. 54-56, emphasis added.)

Second, Encap's proposed construction completely ignores the essence of the invention. A key part of **every claim** is that the seeds have an average density of X and the mulch has a density of X±0.5X. (Ex. 1, Claims 1-22.) The purpose is to ensure that when the mulch, "when mixed with grass or other crop seeds, does not tend to segregate during shipping and handling." (Ex. 1, col. 1, ll. 8-9; *see also*, col. 1, ll. 24-27 and ll. 38, 43.)

If, as Encap's construction proposes, the seeds are "bound within or encapsulated within" the mulch, density would be irrelevant. The seeds could not separate from the mulch. Encap's construction makes a key part of the claims meaningless. A proper construction does not do that. *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1373 (Fed. Cir. 2002).

Accordingly, because the claim clearly defines "seed-containing mulch product," Profile requests that the Court adopt Profile's proposed construction. *Philips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms.").



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

2. **"Compacting"** (Claims 1 And 11)

| **Profile's Proposed Construction** | **Encap's Proposed Construction** |
|---|---|
| Extrusion under pressure, pressure rolling, prilling or other techniques which compact the agglomerated material into a form which has some degree of structural integrity, and which, following drying can maintain its shape or be comminuted appropriately. | Extrusion under pressure, pressure rolling, prilling or other techniques which compact the agglomerated material into a form which has some degree of structural integrity, and which, following drying can maintain its shape or be comminuted appropriately.<br><br>It is necessary, regardless of the means of compacting, that the uncompacted precursor contain enough binder, surfacant, water absorber, and like compounds, to produce a product which can withstand the rigors of further comminution (when practiced), storing, without breakdown into fine particles. The flakes, prills, etc., which are produced must also be a limited period of time as is well known. |

The specification of the '499 patent expressly defines the term "compacting":

> By the term "compacting" is meant extrusion under pressure, pressure rolling, prilling or other techniques which compact the agglomerated material into a form which has some degree of structural integrity, and which, following drying can maintain its shape or be comminuted appropriately.

(Ex. 1, col. 6, ll. 42-48.) The parties agree on the above definition. Encap further adds, however, the following, which is not part of the definition:

> It is necessary, regardless of the means of compacting, that the uncompacted precursor contain enough binder, surfacant, water absorber, and like compounds, to produce a product which can withstand the rigors of further comminution (when practiced), storing, without breakdown into fine particles. The flakes, prills, etc., which are produced must also be a limited period of time as is well known.

(Encap's Brief, p. 8, *citing* Ex. 1, col. 4, ll. 15-22)



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

Encap's proposed addition ignores claim construction principles and the plain language of the patent. A fundamental principle of claim construction is that an inventor can be his own lexicographer. *Vitronics*, 90 F.3d at 1582. Here, Spittle has expressly defined the term "compacting." The Court must use that definition and no others. *Phillips*, 415 F.3d at 1316.

The additional text that Encap proposes has nothing to do with "compacting." To the contrary, that additional text discusses the "uncompacted precursor material." (Ex. 1, col. 4, l. 17.) Encap's additional text clearly states that it is not defining "compacting" by noting that it is "regardless of the means of compacting." (Ex. 1, col. 4, l. 16, emphasis added.) Encap ignores the law and the facts. Profile requests that the Court adopt the patent's construction of the term "compacting."

### 3. **"Mulch Flakes"**[2] (Claim 1 Only)

| Profile's Proposed Construction | Encap's Proposed Construction |
|---|---|
| Mulch that is prepared by agglomerating one of more digested or undigested natural lignocellulosic raw materials and/or sewage sludge raw material and compacting into a compacted product which is then comminuted. | Irregular platelets with a thickness which is less than the dimensions across the platelet. |

"Mulch flakes" is a product-by-process limitation in claim 1. "A product-by-process claim is one in which the product is defined at least in part in terms of the method or process by which it is made." *Smithkline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312, 1315

---

[2] Encap omits the "s" in "mulch flakes," although it is not clear why.

-8-

Brooks Kushman P.C.
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel  (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

(Fed. Cir. 2005)(citation omitted). The claim explains that mulch flakes are "prepared by agglomerating one of more digested or undigested natural lignocellulosic raw materials and/or sewage sludge raw material and compacting into a compacted product which is [then] comminuted." (Ex. 1, claim 1.) Because the process for creating "mulch flakes" is clearly defined in the claim, no further construction is necessary. *Philips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms"); *Renishaw*, 158 F.3d at 1248 (citation omitted)("the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").

Encap's proposed construction not only flies in the face of the definition recited in claim 1, it also ignores that the specification uses "mulch" and "mulch flake" interchangeably, as discussed in Section II. While the specification recites that "**[i]t is preferable** that the mulch be supplied in a flake form, *i.e., in irregular platelets with a thickness which is less than the dimensions across the product,*"(ex. 1, col. 2, ll. 5-8, emphasis added), that is only a preference, not a requirement. *Toro Co. v. White Consol. Indus. Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) ("[i]t is well established that the preferred embodiment does not limit broader claims that are supported by the written description.") Encap omits the very next two sentences of the specification which recite:

> However, other shapes are useful as well, for example, shapes resembling seeds, with aspect ratios of 1:1 to 1:10; preferably 1:1 to 1:5; long strips with aspect ratios greater than 10:1 and the like. It may be preferable to employ mixtures of several shapes in particular applications.

(Ex. 1, col. 2, ll. 8-12)



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel (248) 358-4400
Fax (248) 358-3351

www.brookskushman.com

The specification makes it clear that there are an endless variety of dimensions for the claimed "mulch flakes." *Id.* In addition, while Encap is right that a patentee can be his own lexicographer, Spittle did **not** define mulch flakes in the specification. The specification contains a section where terms are defined. (Ex. 1, col. 6, ll. 32-67.) "Mulch flakes" is not defined there, showing that "mulch flakes" has no special meaning beyond what claim 1 states.

For these reasons, Profile requests that "mulch flakes" be construed as a product made by the process defined in claim 1.

### 4. "Natural or Synthetic Binder" (Claim 11 Only)

| Profile's Proposed Construction | Encap's Proposed Construction |
|---|---|
| A substance that has the ability to bind materials together that is either natural or synthetic. | A binder is a natural or synthetic substance that itself exhibits adhesive/tacky/sticky properties for the purpose of adhering/holding materials together. |

Both parties agree that the term "natural or synthetic binder" should be construed using the **same** dictionary definition, but they reach opposite results. That is because Encap supports its construction by modifying the dictionary definition without informing the Court of the modification.

In its Brief, Encap "quotes" the following definition of "binder" from The American Heritage Dictionary: "something, such as latex in certain paints, that creates uniform consistency, solidification or cohesion **(i.e. adhesion)**." (Encap's Brief, pp. 9-10, emphasis added.) Encap then argues that adhesion is essential to support its construction that the binder "itself" must be "adhesive." But, the actual dictionary definition does not include the phrase:



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

-10-

**"(i.e. adhesion),"** which Encap inserted without notifying the Court. (Ex. C to the Decl. of Hanewicz.)

Without the added word "adhesion," the dictionary supports Profile's construction. A binder must bind. But it need not, **itself**, exhibit "adhesive" properties. Encap's dictionary provides the following definition of "binder," which Encap ignores: 2. Something used to bind. (Ex. C to the Decl. of Hanewicz.) The definition Encap cites (and changes) is definition #4. Definition #2 is the correct one for Spittle's patent.

Encap also argues that the patent specification supports its construction. Encap **claims** that the listed exemplary materials all "have adhesive properties," but Encap cites no record to support that claim — it is mere attorney argument. (Encap's Brief, p. 10) The patent specification reveals that the binders need not, themselves, be adhesive. For example, it says the natural binder may be an "'adhesive' binder." (Ex. 1, col. 2, l. 63.) If all binders are adhesive, as Encap argues, Spittle would not have said "'adhesive' binder." The phrase would be redundant. But, as the dictionary reflects, binders are not necessarily adhesive by themselves. Thus, the patent's use of the modifier "adhesive" to describe one type of binder makes sense.

Profile's proposed construction is entirely consistent with the claims, the specification and the ordinary meaning of the term. Accordingly, Profile's proposed construction should be adopted.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

5.    **"Admixture"** (Claim 11 Only)

| Profile's Proposed Construction | Encap's Proposed Construction |
|---|---|
| The act of mixing together. | Having a seed bound or encapsulated within mulch flakes. |

The '499 patent does not define "admixture." It does say, however, that the seed and mulch are mixed together to form the end product. (Ex. 1, col. 1, ll. 6-9; *see also*, col. 4, ll. 43-46). This understanding of "admixture" is consistent with its ordinary meaning. The dictionary defines admixture as "the action of mixing." (Exhibit 2, The Webster's II New Riverside University Dictionary (1988).)

Encap's proposed construction, in contrast, changes the plain meaning of the term. Encap wrenches text from the patent out of context, then wrongly asserts that Spittle created a special definition for "admixture."

As the only support for its construction, Encap cites text that describes a **secondary** use for the invention. As explained earlier, a secondary use of the invention is to provide "unique mulch products, including products having seed attached or incorporated within mulch flakes." (Ex. 1, col. 1, ll. 54-56.)

The text Encap crops in its Brief at page 11 begins "[m]oreover," indicating that an additional function can be performed. The text that follows says the process "**allows** seed to be admixed with the mulch material, and thus to be encapsulated and/or bound thereto." (Ex. 1, col. 4, ll. 28-31, emphasis added.) Admixture does not **require** encapsulation or binding in or to the mulch. The specification simply identifies one way that the two materials **may** be admixed — by being encapsulated or bound. *Comark*, 156 F.3d at 1187 ("although the



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

-12-

specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *see also Phillips*, 415 F.3d at 1323.

Spittle did not include any definition of admixture in the definition section located at the end of the specification. This shows that he did not give the word any special meaning.

Profile requests that the Court reject Encap's proposed construction for "admixture" and instead adopt Profile's proposed construction.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

## IV. CONCLUSION

For the above stated reasons, Profile respectfully requests that the Court reject Encap's proposed constructions and instead adopt Profile's proposed constructions for the disputed terms of the '499 patent.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By: /s/ Brian S. Tobin
    THOMAS A. LEWRY    (P36399)
    BRIAN S. TOBIN    (P67621)
    1000 Town Center
    Twenty-Second Floor
    Southfield, Michigan 48075-1238
    Tel:    (248) 358-4400
    Fax:    (248) 358-3351
    E-mail:    tlewry@brookskushman.com
               btobin@brookskushman.com

Date: June 3, 2009        *Attorneys for Plaintiff*



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

# CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on June 3, 2009, I electronically filed the foregoing **PROFILE PRODUCTS LLC'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR CLAIM CONSTRUCTION** with the Clerk of the Court for the Western District of Wisconsin using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing: Christopher G. Hanewicz, David J. Harth, Thomas A. Lewry, Brian S. Tobin, and Philip Weiss.

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System: None

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By: /s/ Brian S. Tobin
THOMAS A. LEWRY (P36399)
BRIAN S. TOBIN (P67621)
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075-1238
Tel: (248) 358-4400
Fax: (248) 358-3351
E-mail: tlewry@brookskushman.com
btobin@brookskushman.com

*Attorneys for Plaintiff*

**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel (248) 358-4400
Fax (248) 358-3351

www.brookskushman.com